STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ROBERT J. SCHUMANN, DEFENDANT–RESPONDENT.

Argued March 28, 1988—Decided August 15, 1988.

*Linda K. Calloway,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

*Jeffrey B. Steinfeld,* Designated Counsel, argued the cause for respondent (*Alfred A. Slocum,* Public Defender, attorney).

PER CURIAM.

This appeal arises from the conviction of defendant, Robert J. Schumann, for aggravated sexual assault, contrary to *N.J.S.A.* 2C:14–2a(1) (count one); sexual assault, contrary to *N.J.S.A.* 2C:14–2b (count two); and endangering the welfare of a child, contrary to *N.J.S.A.* 2C:24–4b(4) and *N.J.S.A.* 2C:24–4a (counts three and four). The appeal raises three issues: (1) whether the trial court had jurisdiction to hear count three of the indictment, (2) whether the trial court erred in admitting testimony of the victim regarding defendant's statement warning

the victim not to tell his parents about the incident and relating the defendant's conviction for a prior similar offense, and (3) whether the prosecutor erred in commenting on summation on the defendant's election not to testify. The Appellate Division reversed the convictions on counts one, two, and four and remanded them for a new trial, and reversed the conviction on count three and remanded that count for entry of a judgment of acquittal. 218 *N.J.Super.* 501 (1987). We granted certification, 109 *N.J.* 484 (1987), and now affirm the judgment of the Appellate Division with respect to counts one, two, and four, but reverse the judgment of acquittal on count three and remand that count, along with the other counts, to the Law Division.

I

The relevant facts are set forth in detail in the Appellate Division opinion, 218 *N.J.Super.* at 504–06. For our purposes, the following summary will suffice. On June 14, 1984, defendant and Paul Zimmer drove the victim, D.H., who was then eleven years old, from D.H.'s home in Bryn Mawr, Pennsylvania to New Jersey. They drove D.H. to Sandy Hook, where defendant photographed and sexually assaulted him behind a bush near a nudist beach, which is part of the Gateway National Recreation area. Most of Sandy Hook is subject to concurrent state-federal jurisdiction, but part is subject to exclusive federal jurisdiction. In the course of the day, Schumann committed other sexual offenses on D.H., and "told D.H. not to disclose the sexual activity to anyone because Schumann could 'get into trouble,' and that he had been sent to jail because he had engaged in similar activity with another boy who confided in his parents." *Id.*, 218 *N.J.Super.* at 505.

After leaving Schumann at his home in Clarksburg, D.H. went with Zimmer to Pennsylvania, where on June 18 D.H.'s parents picked him up at a child abuse center. While driving home from the center on that date, D.H. told his mother, as she

so testified, "that he had been asked to have oral sex with Robert Schumann." *Ibid.*

## II

■ Regarding the jurisdictional issue that affects count III, the Appellate Division stated:

> Count three charged Schumann with violation of *N.J.S.A.* 2C:24–4b(4) in that "in diverse locations" in Monmouth County he photographed D.H., age 11, in a prohibited sexual act or in simulation of such an act. The trial judge properly exercised his discretion in denying Schumann's motion to dismiss count three of the indictment. The count is not "palpably defective" because it alleges all essential facts of the crime and sufficiently states the charge. *State v. New Jersey Trade Waste Ass'n,* 96 *N.J.* 8, 18–19 (1984). There is, however, a marked difference between a motion which tests whether the necessary elements of an offense have been set forth in the indictment and the burden of the State at trial to prove those elements beyond a reasonable doubt.
>
> Schumann says that the New Jersey Superior Court was without jurisdiction to try him under count three of the indictment because the proof as to the offense charged therein places the activity on Sandy Hook. He says that in 1846 "exclusive" jurisdiction over all of Sandy Hook was ceded to the federal government.
>
> Although it has not been addressed as such, jurisdiction, when placed in issue, is "an element of an offense" which must be proved beyond a reasonable doubt. Consistent with constitutional mandate, *N.J.S.A.* 2C:1–13(a) provides:
>
>> No person may be convicted of an offense unless each element of such offense is proved beyond a reasonable doubt. In the absence of such proof, the innocence of the defendant is assumed.
>
> Under *N.J.S.A.* 2C:1–4:
>
> h. 'Element of an offense' means (1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as....
>
>> (e) Establishes jurisdiction or venue;
>
> ....
>
> "[T]he 'jurisdiction' referred to in the criminal code definition of the elements of an offense is territorial jurisdiction, defined in *N.J.S.A.* 2C:1–3." *State in Interest of G.W.,* 206 *N.J.Super.* 50, 55 (App.Div.1985).

[*Id.* 218 *N.J.Super.* at 506–07.]

After finding that the State "probably has at least concurrent jurisdiction over most of Sandy Hook," the Appellate Division concluded that "jurisdiction over any given area * * * must be established to the satisfaction of the jury, when appropriately placed in issue, beyond a reasonable doubt." *Id.* 218 *N.J.Super.* at 507–08 n. 2. We believe a more correct statement would

have been that the court should determine as a matter of law whether it has jurisdiction over a specific area, and that the trier of fact then determines whether the crime occurred within that area. Thus, the trier of fact determines the disputed facts concerning the "attendant circumstances," *N.J.S.A.* 2C:1–14h(2), of a defendant's conduct relating to jurisdictional issues. *See* II *The New Jersey Penal Code Commentary: Final Report of the New Jersey Criminal Law Revision Commission* (Oct.1971) at 37–38; *State v. O'Shea,* 16 *N.J.* 1, 4 (1954) (evidence was sufficient for jury to find crime was committed within venue of court); *State v. Estrada,* 35 *N.J.Super.* 459, 461–62 (Law Div.1955) (fact question for jury whether defendant removed himself from or secreted himself within jurisdiction for purposes of determining whether statute of limitations should be tolled in his bigamy prosecution); *see also State v. Reldan,* 185 *N.J.Super.* 494, 506 (App.Div.) (whether a New Jersey court had territorial jurisdiction over a murder prosecution when victims were abducted from New Jersey and their bodies were found in New York required legal interpretation of *N.J.S.A.* 2C:1–3 and was not a question for jury), certif. denied, 91 *N.J.* 543 (1982).

In this case, therefore, the determination of the areas of Sandy Hook that are subject to concurrent state-federal jurisdiction is a legal question to be decided by the court. The jury should then determine beyond a reasonable doubt whether the offense occurred within that area. Here, the trial court should have determined the area subject to the jurisdiction of the State, and the jury should have determined whether the offense took place within that area. Because the trial court did not make that determination, we are obliged to remand the matter for further proceedings consistent with this opinion.

### III

As to the remaining counts, the Appellate Division found that D.H.'s testimony concerning defendant's admonition

476

not to tell anyone about their sexual act and defendant's admission of a prior conviction for a similar offense, when combined with improper remarks by the prosecutor during summation, constituted reversible error. Specifically, the Appellate Division stated:

The trial judge denied Schumann's *in limine* motion to exclude, under *Evid.R.* 4,[1] D.H.'s testimony as to Schumann's prior combined warning and admission of a similar conviction, presumably on the ground that it tended to explain the absence of a "fresh complaint." This rule is applied widely in rape and morals cases and permits proof that the violated victim complained within a reasonable time to someone who would ordinarily be turned to for sympathy, protection and advice. Among other reasons, it is offered as an explanation of a "self-contradiction" which would result from the absence of a complaint. *State v. Balles,* 47 *N.J.* 331, 338 (1966), *cert. den.* 388 *U.S.* 461, 87 *S.Ct.* 2120, 18 *L.Ed.*2d 1321 (1967). The record reflects that the jury received evidence that D.H. made a "fresh complaint" to his mother so that it was unnecessary to rebut the absence of "fresh complaint" by use of the Schumann warning-admission. Accordingly, the evidence of prior similar crime, not offered for any of the reasons enumerated or contemplated under *Evid.R.* 55,[2] should have been excluded under *Evid.R.* 55 and *Evid.R.* 4.

We have long recognized that the restrictions upon the admissibility of other-crimes evidence to prove predisposition stem not so much from a lack of probative worth as from the potential for unfair prejudice. The danger exists that a jury, aware of other-crimes evidence, may convict a defendant not on the evidence of the specific crime at issue but because of the perception that the defendant is a "bad" person in general.

[*State v. Gibbons,* 105 *N.J.* 67, 77 (1987)] (Citations omitted)

The question of whether this was harmless error must be considered together with other trial error.

---

[1]*Evidence Rule* 4 provides:

The judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will either (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury.

[2]*Evidence Rule* 55 provides:

Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.

During summation, the prosecutor referred to Schumann's silence after being furnished with his rights, including the right to remain silent saying, "... whenever [investigator] Cernak gets to—how about these sexual incidents, whoa, I want an attorney ... as soon as he's asked about sexual incidents, I want an attorney. Now, there is nothing wrong with that. He's got that right. But ask the question. Did he ever deny it?" There was neither an objection, nor a curative comment or charge by the trial judge. The comment by the prosecutor was improper. Even though he told the jury that defendant had a right to an attorney and there was nothing wrong in requesting one, the prosecutor plainly intended to focus the attention of the jury upon defendant's silence, after having been instructed that he had a right to remain silent. In this case, defendant elected not to take the stand. Thus, unlike *Doyle v. Ohio*, 426 *U.S.* 610, 96 *S.Ct.* 2240, 49 *L.Ed.*2d 91 (1976); *State v. Lyle*, 73 *N.J.* 403 (1977); *State v. Deatore*, 70 *N.J.* 100 (1976), and *State v. Merola*, 214 *N.J.Super.* 108 (App.Div.1986), we are not faced with the question of use of prior silence in cross-examination of the defendant. Nonetheless, we think it clear from the holdings in these cases that, if anything, the prosecutor's comments on summation should receive an even less favorable reception from a New Jersey court where a defendant has not taken the stand. *Cf. Griffin v. California*, 380 *U.S.* 609, 85 *S.Ct.* 1229, 14 *L.Ed.*2d 106 (1965), reh. denied 381 *U.S.* 957, 85 *S.Ct.* 1797, 14 *L.Ed.*2d 730 (1965).

In many cases, the weight of the State's evidence might be such as to render either or both of these errors relatively harmless. Here, however, where the entire case rested on the credibility of a single youthful witness, we believe that there was a clear capacity to bring about an unjust result by substantially enhancing the victim's credibility through an improper focus on the defendant's post-warning silence and prior similar conviction. *R.* 2:10-2. [*Id.* 218 *N.J.Super.* at 508-10.]

We agree.

■ The State contends further that the victim's testimony regarding the defendant's comments should have been admitted because the evidence was probative of the defendant's consciousness of guilt. Under *Evidence Rule* 63(10), hearsay statements are admissible when they are contrary to the declarant's pecuniary or proprietary interest, would subject the declarant to civil or criminal liability, would render a claim by the declarant against another invalid, or make the declarant an object of hatred, ridicule, or social disapproval in the community. For example, a defendant's post-arrest statement is admissible as a declaration against interest when the defendant asserts that if he discovered the identity of an informant he

would kill him. *State v. Rechtschaffer*, 70 *N.J.* 395, 413–14 (1976).

Any probative value of the statement as reflecting defendant's consciousness of guilt is clearly outweighed by the prejudice resulting from the inference "that because defendant is a person of criminal character, it is more probable that he committed the crime for which he is on trial." *State v. Weeks*, 107 *N.J.* 396, 406 (1987) (quoting McCormick, *Evidence* § 190, at 557–58 (E. Cleary 3d ed. 1984) (footnote omitted)). The underlying danger of admitting the statement is that the jury convicted defendant, not because of the evidence, but because he is in general a "bad" person. *State v. Gibbons*, 105 *N.J.* 67, 77 (1987); *State v. Ramseur*, 106 *N.J.* 123, 265 (1987); Biunno, *Current N.J. Rules of Evidence*, comment 1 to *Evid.R.* 55. In the present case, use of defendant's statement contravened both *Rule* 55, which generally prohibits use of evidence of prior crimes, and *Rule* 4. The statement's low probative value and high prejudicial effect, together with the lack of any limiting instruction, combine to make its admission reversible error.

■ Contrary to the assertion by the State, the prohibition of *Evidence Rule* 55 is not predicated on the offer of evidence of "other crimes" to prove that the other crimes had, in fact, occurred. Thus, the prohibition of other crime evidence is not limited, as is the definition of "hearsay" under *Evidence Rule* 63, to statements offered to prove the truth of the matter asserted.

The prosecutor compounded this error on summation by emphasizing defendant's prior offense: "Maybe he [defendant] feels more at home in New Jersey; I don't know. If he did tell young D.H. I've done this before with a little boy and I got into trouble and went to jail, maybe he feels more comfortable in New Jersey." Contrary to the State's present assertion that the statements were not adduced to prove the truth of the matter asserted, the prosecutor argued to the jury that the evidence of prior offenses was true. Thus, the jury twice heard

a reference to an offense about which it never should have heard at all. The trial court, moreover, made no attempt to correct the error through a limiting instruction. *Evid.R.* 6 ("[w]hen relevant evidence is admissible as to one party or for one purpose and is inadmissible as to other parties or for another purpose, the judge shall restrict the evidence to its proper scope and instruct the jury accordingly").

 The State also urges, consistent with the trial court's ruling, that the defendant's statements should be admitted as part of the *res gestae* of the incident. In this sense, the "res gestae" exception may be viewed as a shorthand reference to the principles contained in two exceptions to the rule excluding hearsay evidence, *Evidence Rule* 63(4), pertaining to spontaneous and contemporaneous statements, and *Evidence Rule* 63(12), pertaining to statements of physical or mental condition of declarant and related history.

*Evidence Rule* 63(4) does not provide a basis for admission of D.H.'s testimony regarding defendant's statement. The first section of the Rule provides an exception for statements that "narrate, describe or explain" an event that a declarant is currently perceiving. It clearly does not apply to a warning not to tell anyone about a sexual assault that occurred at a prior undetermined time. The second subsection requires that the declarant be under the stress of nervous excitement caused by the perception of the event, and that the declaration be made within reasonable proximity to the event. *Evid.R.* 63(4)(b). As with *Evidence Rule* 63(4)(a), this subsection does not apply because the event to which the defendant referred was not contemporaneous with, but had occurred more than eight years prior to the statement.

The State's contention that the defendant's declaration should be admitted under *Evidence Rule* 63(12) is also without merit. *Evidence Rule* 63(12) provides for the admission of hearsay statements describing the declarant's state of mind, emotion, or physical sensation when they are in issue or relevant to prove

or explain acts or conduct of the declarant. Defendant's admonition to the victim and his admission of a prior criminal offense simply cannot be construed as statements describing defendant's state of mind, emotion, or physical sensations.

█ Furthermore, the prosecutor, as the Appellate Division noted, 218 *N.J.Super.* at 509-10, improperly referred to defendant's decision to exercise his constitutional right not to testify. That error, in conjunction with the admission of testimony about defendant's prior offense and the misuse of that testimony on summation by the prosecutor, requires that the matter be retried.

The judgment of the Appellate Division is modified, and the matter is remanded to the Law Division.

*For modification and remandment* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed* —None.